UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL N. MILLER and<br>SHEILA MILLER,<br>    Plaintiff,<br><br>v.<br><br><br>CITIMORTGAGE, INC. and<br>CITIBANK, N.A.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 20-40005-TSH |

## MEMORANDUM OF DECISION AND ORDER
May 5, 2020

**Hillman, D.J.**

### Background

Michael N. Miller and Sheila Miller (collectively, "Plaintiffs") brought this action against CitiMortgage, Inc. and Citibank, N.A. (collectively, "Defendants" or "Citi") seeking specific performance of an alleged contract between them regarding the sale of their residential property (Count I), and a preliminary injunction preventing the foreclosure of said property (Count II). More specifically, Plaintiffs assert that Defendants breached a contract which would have permitted a short sale of their residence at 57 Lynnwood Lane, Worcester, Ma (the "Property") and seek to enjoin Defendants from completing a foreclosure auction and sale of the Property. This action was removed to this Court after the Worcester Superior Court denied Plaintiff's

motion to enjoin the foreclosure sale. This Order addresses Defendants' Motion to Dismiss (Docket No. 6). For the reasons stated below, Defendants' motion is *granted*.

## Facts

In December 2006, Plaintiffs executed a promissory note in favor of Defendants for $320,000 and granted a mortgage on the Property to secure the note. When Plaintiffs defaulted on their mortgage payments, Defendants scheduled a foreclosure auction for September 19, 2018 and advertised the sale in the *Worcester Telegram and Gazette*. In October of 2018, the parties discussed a short sale of the Property as an alternative to foreclosure. As outlined below, various proposals were considered by the parties resulting in the foreclosure auction being postponed by public proclamation eight (8) times to September 11, 2019.

In December 2018, Citi accepted a short sale in the amount of $365,000 that was scheduled to close in March 2019. The closing was ultimately extended until April 30, 2019, however, the proposed buyer cancelled the deal in early April after receiving an appraisal that valued the Property significantly less than $365,000. Thereafter, other buyers proposed purchasing the Property for amounts less than Citi was willing to accept. At the end of August 2019, the proposed buyers informed Citi that they were not going to pay more than $275,000 for the Property. On August 29, 2019, Citi sent an email to Plaintiffs notifying them that they would not accept the $275,000 offer and that the negotiator had closed the review. The email from Citi states in pertinent part: "If the buyer or new buyer is willing to accept the counter [$320,000] I will need the documents listed below."  The email then requested a revised purchase contract or addendum and a revised HUD-1 settlement statement.

On September 3, Plaintiffs notified Citi that the proposed buyers were considering raising their bid from $275,000 to $320,000 and that there was another buyer that might be willing to

pay the $320,000 asking price, but they would need until at least September 7, 2019 to provide the requested documents. On September 3, 2019, Citi sent an e-mail to Plaintiffs which states in pertinent part:

> If the buyer or new buyer is willing to accept the counter I will need the documents listed below. I appreciate your time. Thank you for assisting our customer. Have a great day.
>
> l. Revised purchase contract or addendum to meet the counter offer 320k.
>
> 2. Revised hud I statement to meet counter 320k, good through 45-60 days.

On September 5, Citi followed up with Plaintiffs and requested the above documents and additionally, requested that the buyers provide proof of funds. Citi indicated that "[t]he documents … are needed today so that I can escalate the review with the negotiator."  Later that day, Plaintiffs sent all requested documents, including a new purchase contract from a third-party willing to buy the Property for $320,000. On Friday September 6, 2019, Citi provided conflicting responses as to whether it would consider the buyers' offer. Initially, Citi stated that the requested documents had to be received seven business days in advance of the scheduled September 1l, 2019 auction and therefore were being rejected. In a later communication on September 6th, Citi indicated that the documents had to be received seven calendar days or more before the auction date and Citi was escalating the review and would be working to postpone the auction. Ultimately, Citi did not attempt to postpone the auction.

On September 11, Plaintiffs filed the instant action in Worcester Superior Court along with an emergency request for a preliminary injunction. The Worcester Superior Court denied Plaintiffs' request for an injunction that same day and the foreclosure auction went forward. Citi, as the high bidder, purchased the Property.

**Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F. 3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F. 3d 75, 77 (1st Cir. 1999)). The Court may also consider on a motion to dismiss all material attached to the complaint or incorporated by reference. *Trans-Spec Truck Serv. V. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008). To withstand dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations, when viewed in the light most favorable to the non-moving party, must raise the right to relief above the speculative level. *Id.* at 555.

**Discussion**

Plaintiffs allege that the emails between them and Citi constituted a binding contract which would have permitted a short sale of the Property. Citi argues that Plaintiffs have not pled sufficient facts to establish a claim for breach of contract and therefore, their claim for specific performance fails as a matter of law. In a request for specific performance of a contract, plaintiffs must show that there is a binding contract, that the agreed time of performance has arrived, and that the party seeking equity has performed or is prepared to perform. *McCarthy v. Tobin*, 429 Mass. 84, 86 (1999). Plaintiffs argue that an offer to engage in a short sale and an acceptance are alleged in the complaint with sufficient specificity, in particular, in paragraphs 19-21. However, accepting the allegations in the complaint as true, for the reasons set forth below, I find, as a matter of law, Plaintiffs have failed to state a plausible claim for specific performance.

Plaintiffs assert that Citi made an offer to engage in a short sale when it requested certain documents from Plaintiffs and proposed buyers, and that offer was accepted when Plaintiffs provided the requested documentation to Citi. Citi argues that the allegations in the complaint fail to state any facts which would support a finding that Citi had agreed in writing to a short sale of the Property prior to the foreclosure sale. The controlling inquiry for a formation of a contract is the intention of the parties. *See Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992), quoting *Kuzmeskus v. Pickup Motor Co.*, 330 Mass. 490, 493 (1953) ("It is a settled principle of contract law that '[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract'"). In its follow up email, Citi stated that its purpose in requesting the documents was to "escalate" the review with the negotiator. Simply put, the complaint fails to allege any facts which would support a finding that Citi intended to commit to a short sale if the Plaintiffs and proposed buyers provided the requested documentation. Therefore, Plaintiffs' claim for specific performance of the alleged contract fails.

Citi also argues that Plaintiffs' claim for specific performance is moot since the foreclosure auction has already taken place. *See Vigorito v. City of Chelsea,* 95 Mass. App. Ct. 272, 276 (2019)(litigation is considered moot when party who claimed to be aggrieved ceases to have personal stake in its outcome, thus where structure at issue has been demolished case is moot). Plaintiffs, on the other hand, argue that the foreclosure sale may be voided by this Court and specific performance ordered based on lack of notice. It is true that violations of certain statutory requirements pertaining to foreclosure sales contained in Mass.Gen.L. ch. 244 would render the foreclosure void. *Flores v. OneWest Bank, F.S.B.*, 886 F. 3d. 160, 164 (1st Cir. 2018); *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226 (2015); *Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass.

569 (2012). However, Plaintiffs' complaint does not assert any claims which would support such cause of action. Accordingly, Count I is dismissed.

Plaintiffs' request for an injunction in Count II, which is based on their claim for specific performance of the alleged agreed to short sale, fails to state a plausible claim because it is moot. *See Vigorito v. City of Chelsea,* 95 Mass. App. Ct. at 276. Alternatively, given that the foreclosure auction has already taken place, there is no reasonable likelihood that Plaintiffs can succeed on the merits of this claim. Accordingly, Count II is also dismissed.

## Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (Docket No. 6) is ***granted.***

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**